MRM:BTK
F. #2020R01066

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JAMES BUMPASS,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. **CR 23 183**
(T. 18, U.S.C., §§ 1349, 982(a)(2),
982(b)(1) and 3551 et seq.; T. 21, U.S.C.,
§ 853(p))

**BROWN, J.**

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

<u>The Defendant and His Businesses</u>

    1.    The defendant JAMES BUMPASS was a resident of Huntington, New York. BUMPASS operated Bump & Co. Construction ("Bump & Co."), a purported home improvement business that was based in Suffolk County, New York. BUMPASS also assisted other individuals and entities, whose identities are known to the United States Attorney (collectively, the "Clients"), in applying for various loans. BUMPASS offered such loan brokering services in exchange for a portion of the loans that he obtained on behalf of the Clients.

<u>The COVID-19 Pandemic in the United States</u>

    2.    In or about December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus") caused outbreaks of the coronavirus disease COVID-19 that spread globally. On or about January 31, 2020, the Secretary of Health and Human Services declared a national

public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States. On or about March 11, 2020, the Director-General of the World Health Organization characterized COVID-19 as a pandemic. On or about March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

The Paycheck Protection Program

3. On or about March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The CARES Act was a federal law designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

4. To obtain a PPP loan, qualifying businesses were required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required recipient businesses, through an authorized representative, to acknowledge the program rules and make certain affirmative certifications to establish eligibility for the PPP loan. For example, in the PPP loan application, recipient businesses, through an authorized representative, were required to state, among other things, their average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the businesses were eligible to receive under the PPP. The recipient businesses were

also required to provide documentation supporting the information contained in the PPP loan application.

5. PPP loan proceeds were required to be used by the recipient businesses on certain permissible expenses, to wit: payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven if the recipient businesses spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain percentage for payroll costs.

6. The PPP was overseen by the Small Business Administration ("SBA"), which had authority over all PPP loans. Individual PPP loans, however, were issued and approved by private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

The Economic Injury Disaster Loan Program

7. The Economic Injury Disaster Loan ("EIDL") program was also overseen by the SBA and was designed to provide long-term, low-interest loans for small businesses affected by various natural and economic disasters. The CARES Act provided funding for EIDL loans for businesses affected by the COVID-19 pandemic. In contrast to the PPP, EIDL loan amounts were determined based on the recipient businesses' historical revenue and disbursed directly by the SBA.

The Defendant's PPP and EIDL Bank Fraud

8. On or about and between June 30, 2020 and March 16, 2021, both dates being approximate and inclusive, the defendant JAMES BUMPASS, together with others, engaged in a scheme to defraud the SBA and several financial institutions administering the PPP and EIDL programs of federal COVID-19 emergency relief funds meant for distressed small

businesses. It was a part of the scheme to defraud that BUMPASS submitted, or caused to be submitted, at least six online loan applications to obtain funds through the PPP and EIDL programs for Bump & Co. and the Clients. It was further a part of the scheme to defraud that these loan applications and certain supporting documentation contained materially false and fraudulent information, including, but not limited to, Bump & Co.'s and the Clients' number of employees, payroll costs and intended use of the loan proceeds, all of which was specifically designed to mislead the SBA and financial institutions administering the PPP and EIDL programs into disbursing various loans, which they did.

9. In total, on or about and between June 30, 2020 and March 16, 2021, both dates being approximate and inclusive, as a result of this fraudulent scheme, the SBA and financial institutions administering the PPP and EIDL programs wire-transferred sums totaling approximately $648,800 in PPP and EIDL loans for Bump & Co. and the Clients to bank accounts that the defendant JAMES BUMPASS and the Clients had access to and control over at bank branches in the Eastern District of New York and elsewhere.

10. Shortly after receiving these fraudulently obtained loan proceeds, the defendant JAMES BUMPASS utilized the proceeds to enrich himself, including by making extravagant purchases. For example, in or about March 2021, BUMPASS used approximately $30,000 in PPP and EIDL loan proceeds to make purchases at two jewelers located in, respectively, New York, New York and Queens, New York.

The Defendant's Additional Bank Fraud

11. In or about and between August 2019 and September 2019, both dates being approximate and inclusive, the defendant JAMES BUMPASS fraudulently obtained approximately $80,000 in loans from Enerbank USA ("Enerbank"). In furtherance of the

scheme, BUMPASS submitted online loan applications to Enerbank. In the applications, BUMPASS claimed that the requested loans would fund home improvement projects at residences located in Nassau County. In truth, however, BUMPASS knew and believed that the loans would not be used to finance such projects and would instead be used by BUMPASS and others for personal purposes unrelated to the purported home improvement projects described in the loan applications that BUMPASS submitted to Enerbank. After Enerbank issued the requested loans, BUMPASS, together with others, made cash withdrawals of approximately $16,000 to enrich himself and others.

12. On or about December 2, 2019, the defendant JAMES BUMPASS, together with others, wire-transferred approximately $81,000 from a bank account that two individuals whose identities are known to the United States Attorney (collectively, the "Victims") established at JP Morgan Chase Bank, N.A. ("Chase") in Texas, to an account that BUMPASS maintained at Chase in Nassau County, New York. The Victims did not consent to these wire-transfers. After receiving the wire transfers, BUMPASS, together with others, made cash withdrawals of approximately $37,000 to enrich himself and others.

## CONSPIRACY TO COMMIT BANK FRAUD

13. The allegations contained in paragraphs one through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. On or about and between August 1, 2019 and March 16, 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JAMES BUMPASS, together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud financial institutions administering the PPP and EIDL programs on behalf of the SBA, Enerbank and Chase (collectively, the "financial institutions")

and to obtain moneys, funds, credits, and other property owned by, and under the control of such financial institutions, by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

15.  The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offense to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

16.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

7

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

*By Carolyn Pokorny, Assistant U.S. Attorney*
_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2020R01066
FORM DBD-34
JUN. 85

No. _____

## UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

JAMES BUMPASS,

Defendant.

## INFORMATION

(T. 18, U.S.C., §§ 1349, 982(a)(2), 982(b)(1) and 3551 et seq.; T. 21, U.S.C., § 853(p))

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____

*Clerk*

*Bail, $* _____

*Bradley T. King, Assistant U.S. Attorney (631) 715-7875*